IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**TRON N. HILL,**

      Petitioner,

v.                                                       Civil Action No. 5:08cv96
                                                                   (Judge Stamp)

**JOE DRIVER Warden,**

      Respondents.

## OPINION/REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* petitioner initiated this action on May 15, 2008, by filing an Application for Habeas Corpus Pursuant to 28 U.S.C. § 2241. In the petition, the petitioner challenges a decision of the United States Parole Commission ("the Commission") to deny him parole. On July 30, 2008, the respondent filed a Response and Motion to Dismiss. After the issuance of a Roseboro Notice, which advised the petitioner of his right to file material responsive to the respondent's dispositive motion, the petitioner filed a reply on September 4, 2008. The petitioner subsequently filed a summary judgment motion on November 20, 2008. Accordingly, this case is before the undersigned for a report and recommendation pursuant to LR PL P 83.09, et seq.

### II. Factual Background

On July 2, 1990, the Superior Court of the District of Columbia sentenced the petitioner to a life term plus 180 days for voluntary manslaughter and attempted perjury. Resp't Ex. 1.

On December 19, 2000, the petitioner received his initial parole hearing. Resp't Ex. 2. The

hearing examiner, noting that the petitioner had stabbed the victim 50 times and that he had initially lied to the police about his involvement in the crime, found the petitioner had a total point score of nine and denied parole. Moreover, the examiner noted that it was likely the petitioner would require five or more parole hearings before he would reach a point score which would allow parole. On January 8, 2001, the petitioner was informed that parole was denied and he would be continued to a rehearing in July of 2002. Resp't Ex. 3.

The petitioner's second parole hearing was conducted on March 26, 2002. Resp't Ex. 4. At that hearing, the examiner recommended a 2-point reduction in total point score for superior program achievement and a rehearing in May of 2004. However, the reviewing examiner disagreed with the hearing examiner and recommended only a one-point reduction for ordinary achievement and a rehearing in September of 2004. Resp't Ex. 5. On April 15, 2002, the Commission concurred with the reviewing examiner, denied the petitioner parole, and continued him to a rehearing in September of 2004. Resp't Ex. 6.

On November 1, 2004, the petitioner received his third parole hearing. Resp't Ex. 8. At that time, the hearing examiner concluded that the petitioner's point score resulted in a parole guideline range of 207-235 months. Therefore, the hearing examiner recommended that the petitioner be continued to a presumptive parole date of June 7, 2007, after the service of 207 months. However, the reviewing examiner once again disagreed with the hearing examiner and recommended a reconsideration hearing in November of 2007. Resp't Ex. 9. The Commission concurred with the reviewing examiner, denied the petitioner parole, and continued him to a reconsideration hearing in November of 2007. Resp't Ex. 9 & 10.

On January 31, 2008, the petitioner received his fourth parole consideration hearing. At that

hearing, the examiner recommended that the petitioner be continued to a presumptive parole date of September 30, 2009, after service of 235 months. Resp't Ex. 11. However, the reviewing examiner disagreed with the hearing examiner and recommended a reconsideration hearing in February of 2011. Resp't Ex. 12. The Commission concurred with the reviewing examiner on February 22, 2008, denied the petitioner parole, and continued him to a reconsideration hearing in January of 2011. Resp't Ex. 12 & 13. In stating its reasons for departing from the guidelines, the Commission found that the petitioner was a more serious risk than indicated by the guidelines. More specifically, the Commission found that the guidelines did not take into consideration the brutality of the crime and the fact that the petitioner originally implicated his mother as the perpetrator of the crime. In addition, the Commission noted that the petitioner had a violent criminal history.

### III.   The Contentions of the Parties

**A.   The Petition**

In the petition, the petitioner asserts the following grounds for relief:

(1) the Commission's denial of parole was arbitrary and capricious because it waited until his 2008 parole hearing to depart from the guideline range;

(2) by failing to follow the statutory criteria for parole, the Commission violated the petitioner's due process rights when it failed to find the petitioner suitable for parole at his fourth parole hearing; and

(3) the Commission violated the *ex post facto* clause in its regulatory assessment to deny the petitioner's parole because it used guidelines that were harsher that the parole guidelines of the former District of Columbia Board of Parole.

**B.   The Respondent's Response and Motion to Dismiss**

In his response and motion to dismiss, the respondent asserts that the petition is due to be dismissed because the petitioner has failed to state a claim for which this Court may grant relief. In

particular, the respondent contends:

(1) pursuant to the Administrative Procedures Act ("APA"), the Commission's decision to deny the petitioner parole is not reviewable;

(2) the petitioner cannot prove a due process violation because the D.C. Code does not create a liberty interest in parole that is protected by the due process clause; and

(3) the petitioner cannot establish an *ex post facto* violation because parole policy guidelines are not "laws" for *ex post facto* purposes and because the petitioner cannot show that the new guidelines increased his punishment for the same crime.

## C. The Petitioner's Reply

In his reply, the petitioner asserts that the Commission knows that its new guidelines increase the period of incarceration that a D.C. offender will be required to serve. Thus, the petitioner asserts that he can show the Commission's decision to deny him parole is a violation of the *ex post facto* clause.

## D. The Petitioner's Summary Judgment Motion

In his motion for summary judgment, the petitioner argues that because the respondent has admitted that it applied the revised parole guidelines to him, it has admitted to an *ex post facto* violation. Thus, the petitioner asserts that there are no genuine issues of material fact and he is entitled to judgment as a matter of law.

## IV. Analysis

## A. Ground One - Arbitrary and Capricious Decision

In the petition, the petitioner argues that it was not until his fourth parole hearing that the Commission suddenly decided to go outside the guidelines. The petitioner further asserts that this decision was arbitrary and capricious. In support of his claim, the petitioner asserts that he has an excellent institutional record and letters from various staff regarding his rehabilitation and superior

program achievement. The petitioner asserts that the Commission completely disregarded these factors in making its decision and instead, arbitrarily and capriciously focused on the nature of a single past offense to conclude that the petitioner had a violent criminal history. The petitioner does not, however, dispute the seriousness of his crime, but rather, believes he is entitled to a presumptive parole date for meeting all of the requirements for parole eligibility.

A court cannot review the discretionary decision of the Commission to deny parole under an abuse of discretion standard. Garcia v. Neagle. 660 F. 2d 983, 989 (4th Cir. 1981). Parole decisions are not "subject to arbitrary and capricious or abuse of discretion review under the provisions of the Administrative Procedure Act, 5 U.S.C. § 701(a)(2)." Page v. Pearson, 261 F.Supp.2d 528, 530 (E.D.Va.. 2003). Nonetheless, a district court may review the Commission's decision to determine whether it violates constitutional, statutory, regulatory or other restrictions. Id. See also Gruber v. United States Parole Commission, 792 F. Supp. 42 (N.D. W.Va. 1992). Thus, while the Court cannot review the petitioner's claim that the decision of the Commission was arbitrary and capricious, the Court can examine the petitioner's constitutional claims.

**B.   Ground Two - Due Process Violation**

In ground two, the petitioner asserts that his due process rights were violated when the Commission failed to adhere to 28 C.F.R. § 2.73, Parole Suitability Criteria. More specifically, the petitioner asserts that he has observed the rules of the institution, that there is a reasonable probability that he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society. Therefore, because the petitioner believes he meets the parole release criteria of § 2.73, he asserts that the failure of the Commission to grant him parole violates his regulatory and procedural due process rights.

The Constitution does not provide a liberty interest in parole. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979). Nor do the D.C. parole statutes and regulations create one. See, e.g., Simmons v. Shearin, 295 F.Supp.2d 599 (D. Md. 2003); Muhammad v. Mendez, 200 F. Supp.2d 466 (M.D. Pa. 2002); Blair-Bey v. Quick, 151 F.3d 1036, 1047-48 (D.C.Cir. 1998); Price v. Barry, 53 F. 3d 369, 370 (D.C.Cir. 1995). Accordingly, the petitioner cannot establish that his due process rights were violated. Moreover, the petitioner's argument with respect to his eligibility for parole under § 2.73, is nothing more than a challenge to the Commission's substantive decision to deny him parole, a decision which as previously noted, is not reviewable by this Court.

**C.     Ground Three - Ex Post Facto Violation**

In ground three, the petitioner asserts that because he is a D.C. offender, and not a federal prisoner, the Commission is required to adhere strictly to the D.C. parole guidelines that were in effect at the time of his crime. The petitioner further asserts that the 1987 guidelines by the D.C. Parole Board were in effect at the time of his crimes, see 28 DCMR § 204, not the 1998 Parole Commission guidelines, see 63 FR 39172 (July 21, 1998), actually used to determine his parole eligibility. Thus, the petitioner asserts that the much harsher 1998 guidelines were improperly applied to him.

As the Supreme Court has explained, "[t]o fall within the *ex post facto* prohibition, a law must be retrospective–-that is, it must apply to events occurring before its enactment–-and it must disadvantage the offender affected by it, by altering the definition of criminal conduct or increasing the punishment for the crime." Lynce v. Mathis, 519 U.S. 433, 441 (1997) (citations and internal quotations omitted). However, the Commission's guidelines do not impose *ex post facto*

6

punishment because parole guidelines are not laws. See United States v. DeMaree, 459 F.3d 791, 795 (7th Cir. 2006) ("the ex post facto clause should apply only to law and regulations that bind rather than advise, a principle well established with reference to parole guidelines whose retroactive application is challenged under the ex post facto clause.") (citations omitted); Warren v. Baskerville, 233 F.3d 204, 207-208 (4th Cir. 2000) (for purposes of the *ex post facto* clause, parole guidelines are administrative policy, not laws); Inglese v. United States Parole Comm'n, 768 F.2d 932 (7th Cir. 1985) (parole guidelines are not laws within the meaning of the *ex post facto* clause).

However, even if the parole guidelines were considered laws for purposes of the *ex post facto* clause, the petitioner cannot show an *ex post facto* violation occurred in this instance. Here, the Commission did not rely exclusively on the 1998 guidelines. Instead, the Commission departed from the guidelines on the basis of several aggravating circumstances. Not only is such a departure authorized by the 1998 regulations, but such a departure was also authorized by the 1987 D.C. guidelines. See 28 DCMR § 204.22 ("The Board may, in unusual circumstances, waive the SFS and the pre and post incarceration factors set forth in this chapter to grant or deny parole to a parole candidate."). The only additional requirement was that the Board put in writing, the factors used to depart from the strict application of the D.C. guidelines. The Commission's 1998 regulations have a similar provision found at 28 U.S.C. § 2.80(n)(1). In this case, the Commission departed from the guidelines and put in writing its reasons for doing so. The Commission had the discretion to depart whether it used the 1987 D.C. guidelines or the revised 1998 Parole Commission regulations. The petitioner's claim that he would have received more lenient treatment under the previous guidelines is merely speculation.

## V.  Recommendation

For the foregoing reasons, the undersigned recommends that the respondent's Motion to Dismiss and Response to Show Cause Order (dckt. 12) be **GRANTED** and the petitioner's § 2241 petition be **DENIED** and **DISMISSED WITH PREJUDICE**. For those same reasons, the undersigned recommends that the petitioner's Motion for Summary Judgment (dckt. 17) be **DENIED**.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections shall also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: December 18, 2008.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE